Good morning, Your Honors. My name is Don Altilla. I'm a Senior Staff Counsel with the California Department of Insurance, and I'm here on behalf of the Intervenor, California Insurance Commission of John Garamendi. I thank you for allowing me the opportunity to address the Court this morning. Are you an Intervenor, or you just filed an amicus brief? Amicus, excuse me. Okay, sorry. My goal here today is to outline for the Court the Commissioner's current position on the use of discretionary clauses in policies of group disability insurance. The state of the law from the Commissioner's perspective in California is that discretionary clauses which purport to confer upon the insurer discretionary authority to determine eligibility for benefits renders the insurance contract containing those clauses fraudulent and unsound, and therefore unlawful under California law. Is that the entire contract, or would you just excise the paragraph about sole discretion? We would generally excise that, but it does have profound effects on the claims paid, which are throughout the contract. The coverages? Throughout the contract. Yes. If there was different coverages in a contract, it will have different coverages for different possibilities of things happening. And when the insurer takes a level of discretion that's above and beyond normal discretion taken by insurers, it tends to impact the rest of the contract, especially in the area of how the claims are paid. Let me ask you just a procedural question. Sure. You know, this issue was not raised below at the district court level. That is, that the discretionary clause here was invalid under California law or was, you know, that the district court should adopt the position of the insurance Commissioner. This issue was not raised in the district court. You understand that, don't you? I was not aware of that exactly. You read all the briefs, didn't you? I looked at everything, yes. You don't recall that this issue wasn't raised below? I know that some of the information from the Commissioner's office was used below. I didn't know if the exact argument was made. I don't think any of this was below before the district court. I was unaware of that. When did the California Department of Insurance adopt this policy or adopt this interpretation of whatever that statute is? Oh, California Insurance Code Section 10291. When did this policy come into effect? Approximately 1995 or 96, the insurance Commissioner stopped approving these clauses and contracts. All right. And these policies, the ones Beraghi and Westmans that we're looking at today, when were they issued? The question of why these clauses still exist is an interesting one. It has to do with something called insert pages. When a disability insurer goes to sell his product to an employer, he mixes and matches. There's a menu of possible things that an employer might like for coverage. And this is done with the use of these insert pages. While the Commissioner has stopped approving the use of these in prior approval, these insert pages that were approved previously are still out there floating around and can be inserted into a policy. And is that the question you were asking? Well, I'm sort of. I'm trying to figure out how it could be that these policies have a page that the State of California has said it doesn't approve of and has agreed with this very insurance company that it will not issue those pages. Are you talking at the broker level they're inserted? Is that what you're saying? No, the company level. These days, the different. It's not so much a page anymore because of computers. They can print out the whole policy with everything. But in the old days, it was like an addendum or another actual page that would go in there. And prior to approximately 96, insurers could file these single pages and they'd be approved or disapproved. The Commissioner no longer does that. Now they've got to be shown in what context. But following the Firestone case, when we started to receive varying policies and insert pages with the discretionary clause language in it, the fact of the matter is we did not put two things together. We did not realize or understand the impact of Firestone at the time. And a lot of these pages and policies with the discretionary clause language in it were approved. Now, in order to unapprove them, while the statute gives the Commissioner, the whole statutory scheme gives the Commissioner a very broad authority to disapprove on a prior approval, and it gives them a very broad authority to withdraw approval later, it also requires notice and a hearing. And we just finished our first hearing and it took over a year. It was very, very intense, a lot of briefing, a lot of things to clear up because it's a first impression. There's a lot of legal questions. But it's a big task. But in order to unapprove, to make the long story short, you have to go through this process of hearing. All right. So what does the State of California want us to do? What is it requesting us to do with respect to the cases in front of us? Well, I think that we would ask the Court to give deference to the Commissioner's position. He is an elected State Insurance Commissioner. He has expertise in this area. He is elected by the people of the State of California to protect the citizens of the State of California. And we hope you give his opinion as to the illegality, the voidness of these discretionary clauses. Let me ask you. Froggy, I believe it was Ms. Froggy, she objected, she complained to the Insurance Commissioner about the denial of her benefits. And the Commissioner never raised a question with respect to the policy here. I cannot speak to what our consumer people did in relation to that. But I do know that the Commissioner cannot, he doesn't have the authority to, that a court of law has as to the terms of an individual policy contractual dispute. He can put his two cents in. He can put pressure on the companies. Let me ask you another question related to this somewhat. And as I understand from this last request, third request for judicial notice, that there's been a settlement at least between several of the major disability insurers, Unum and Provident in this case, that requires the insurance companies to go back and reassess claims that were denied during a certain period of time. But it seems to exclude cases that are in litigation, as I understand it. I believe that's correct, Your Honor. We were just looking at that. Just because the cases in litigation, they don't, these claimants do not get the benefit of that reassessment. Is that correct? Is that the way, is that your understanding of that clause in the settlement agreement? I wouldn't want to opine on that, Your Honor. It's a very complicated settlement agreement, and I think it was put in here specifically in relation to the fact that the case was pending or does it have to have gone to judgment? I don't know. I do not know. You don't know. Counsel, as I understand your position, and please correct me if I'm in error, under Firestone, the Supreme Court held in effect that a person claiming benefits was entitled to trial de novo in the trial court unless the contract of insurance limited his or her rights by granting discretion to the committee or to the operating committee that was administering the claim. And the court, in reaching that conclusion, relied on black letter trust law. Now, my understanding is what you're saying is that any provision in an insurance contract that purports to reserve that discretion is for one reason or another unconscionable and out of sync with California law and, therefore, should be disregarded, which under Firestone would allow the plaintiff or the person seeking benefits trial de novo in the trial court. Now, Judge Payne has raised a point that is troubling to me. Percolating up through the district courts in California are a number of cases in which men and women have a very issue. And as you know, the district courts have reached conflicting conclusions with full records in front of them. We have no record in front of us at all. Why should not this court defer ruling on or considering your position in the full understanding that it will be considered and that ultimately a panel of this court will deal with one of the cases and can reach a meaningful conclusion? Why should this court or this panel, in effect, vacate the two decisions reached before us and remand for trial de novo? Well, first of all, Your Honor, your historical assessment I agree with completely. I would note that when the Commissioner first became aware of discretionary clause language and began to question its use, it was prior to the Firestone case. The Commissioner believes that any provision that purports to give this level of discretion is simply illegal in California. It's unique. I can't say it's unique. I can say that in my experience in 15 years at the Department, I have never seen a clause in a contract that purports to give this level of discretion. And I believe that is why it has caught the Commissioner's attention. As to what you will ultimately do, I believe that I'm here to say that the Commissioner believes that those provisions are considered as illegal and counter to public policy. All right. So there's a few options we have here. We could give some level of deference to the Commissioner's view in this case. We could, as Judge Singleton says, remand and allow this to be heard on the theory that it's unfair to these plaintiffs to be treated in a different position than similarly situated others. We could certify the California Supreme Court and ask them what is their view of California law with respect to this clause as to all policies issued in California and wait until we hear back from them. Or we could just, I don't see any other option with respect to your position. Do you? I do not. And I'd leave it to Ms. Cantor, the appellant, to try to tell you what she thinks is the best option. I'm here really just to try to explain to you the Commissioner's position. All right. Now, did you allocate time for this? Ms. Ferraghi. Good morning, Your Honors. I'd like to reserve one minute for rebuttal, if I may. My name is Lisa Cantor, and I'm here on behalf of the appellant, Harriet Ferraghi. And I'd like to try to address some of the questions that have been raised this morning, if I could. I think we need to keep in mind here that one of the issues, the issue that we're dealing with here is sort of a conflict between ERISA law and California law. The Firestone decision, as Judge Singleton has pointed out, dealt with trust law. And traditionally, ERISA law dealt with what we call a self-funded plan, a plan that's set up where there's a plan fiduciary and a claims fiduciary, and an employer sets up plan benefits that are paid when a claimant becomes disabled. What we're dealing with here is a plan that's insured by an insurance policy. And when Firestone came out and said that plans' benefit determinations are going to be reviewed by district courts de novo unless you put discretionary language in, what happened was sort of an explosion. In California, an insurance company started putting this discretionary language in. And we saw in the early 90s, in our practice, that this very broad discretionary language started to appear in insurance policies. And this is where the problem arises. And that is why we are here today raising what is really an issue of first impression. Why didn't you raise it in the district court if you had been sensitive to the issue many, many years ago? Well, Your Honor, honestly, we've been raising it in pieces for a long time. And the problem is that now we have the backing of the Department of Insurance. We do. And that's a big impetus, because that gives us a lot of support from another agency. But we also have a lot of history here where we can show you what the problem has become, because over the years, as this Court has seen how far the abuse of discretion standard has become, it has become more and more troubling even in the district. Do you think this is just a purely legal question? I think this is a legal question. And let me frame it for you. The legal question is this. The legal answer is this. While ERISA may allow an insurance policy to contain language, allowing an insurer to have discretionary authority to decide claims, California law does not allow that language. Now, why is this a conflict? I mean, you're saying that if it's an insurance policy issued by California, issued under California law, the Department of Insurance regulates that and has the power to approve that form or not approve that form. Correct. If it's an ERISA plan, then ERISA governs. Now, why is that a conflict? Can ERISA preempt California insurance regulation? Well, ERISA does not preempt this, because this is California insurance law. And these companies, like Provident, would be governed by California insurance law. Precisely. And their plan for their own employees might be, if they had an employee plan, ERISA plan for their own employees, that would be governed by ERISA law. But third parties, you're saying, is governed by insurance law. Well, let me try to explain it this way. If my law firm created a plan, and we funded it with our own money, and our employees, when they became disabled, came to us, and we took our money and decided whether or not to pay them, whether or not they were disabled, we could have discretion to decide whether they were not disabled. But if we went out and bought a policy from Provident, Provident could not have that discretion, because Provident would be governed by California law. It's kind of a first-party, third-party distinction. Well, sort of. I shouldn't say exactly, because it's a little more complicated than that. But if they're an insurance policy, they're governed by California insurance law. And let me try to explain it in kind of a reverse term. If we were to take Ms. Faraghi and assume for a moment that her policy was not governed by ERISA, what the district court would have done would have looked for the truth. Is she disabled, or is she not disabled? Simple. But that's not what the district court was required to do here. What the district court had to do was to decide whether Provident had acted arbitrary and capricious in denying her claim. So instead of a benefit determination, we have to jump all the way over to sort of an arbitrary and capricious, bad faith. Why shouldn't these issues be decided by an appellate panel that has the benefit of a fully developed record and a decision, bearing in mind that the district courts that sit in the state of California have reached conflicting decisions on these various points? I mean, if all of the district courts had agreed with your position, then I suppose you could say, well, why treat Ms. Faraghi different than anybody else? But that hasn't been the case. The district courts in the District of California have disagreed. So some appellate panel, conscious of the records developed in those cases, is going to have to address that disagreement and resolve it. Well, actually, Your Honor, the district courts who have addressed this issue, none of them have looked at what I've given you as a third request for judicial notice. They have all looked at the prior documentation, which is the notice of withdrawal and the opinion letter, which have been replaced by what I've given you as a third request for judicial notice. Right. The final decision by the hearing officer and the adoption of that decision. That's what I've given you. And that only came out on October 3rd. And that is why you didn't raise that before. Well, I couldn't have. It only came out on October 3rd, 2005. Right. Let me briefly address the distinctions that have gone on in the district court level. Well, can I just? You're running out of time. Just factually. Yes. Factually, in this case, Faraghi, give me the facts that would, if, okay, it was determined under an abusive discretion standard. If we were to send this back and have it reviewed under a de novo standard, what are the key facts that you think would enable your client to prevail on? Okay. Her denial letter says there is that her doctors did not provide any specific restrictions that would prevent her from providing, from performing her job. But there's not one piece of correspondence, not one telephone conversation, or any other piece of evidence that anyone ever tried to talk to her doctors and ask for that piece of information which they say is key and they say they're missing. She repeatedly asked them, please talk to my doctors. They wouldn't give her a copy of the IME report that they had until after they denied her. She wrote to them and said, this IME report is wrong. All these things this doctor says about me is wrong. I didn't tell him this. I didn't tell him that. I didn't walk four blocks to get an X-ray. He repeatedly recognized my pain, recognized my difficulty getting on and off the examining table. Her doctor wrote the same kind of letter saying I've treated this woman for many years. She doesn't exaggerate her pain. I believe her when she tells me she's in pain. None of that was discussed with the IME doctor or considered on her appeal. Should I go on? Does it make a difference that her doctor was a chiropractor? It doesn't make a difference that her doctor, her treating doctor was a chiropractor because she was also being seen by an orthopedist. And in this area, that's what's often seen. Orthopedist follows chiropractor treats. She's, you know, being scheduled for surgery, and the chiropractor is doing the actual treating on a weekly basis. I have to, I don't know. May I ask? Yeah, go ahead. I mean, I've got a little more complicated than I thought. Go ahead. I just want to call your attention to one of the documents in this third request for judicial notice. Okay. And that's the settlement agreement. Sure. On page 68. Yes. The bottom. Yes. I just want to make sure my understanding of this agreement is correct. Yes, it is. That is, because she's in litigation, she's not eligible to benefit. Actually. Does there have to be a judgment? The interpretation of Provident is that if there's a district court judgment, she's not eligible for the CSA. So what if there were no judgment? She would be eligible. She would be eligible under this for a reassessment. Correct. Under the standards here. Correct. And at the end of that reassessment, if she loses again, what happens then? Does she get de novo review at that time? That's my understanding, yes. What happens? Once she gets into reassessment, de novo review follows her. That's my understanding of the CSA. Let me ask you this. In terms of, is there any justification or support for an argument that in light of this settlement with the Commissioner of the State of California, that we ought to vacate the judgment and send it back to see if she would benefit from this? Fairness. If there's no resolution of this case, if you vacate the district court judgment, then there's no resolution and she would be eligible for the CSA. That would be one fair way to resolve this. Another way to resolve, as Judge Warlock suggested, a way to resolve the big issue would be to certify to the California Supreme Court. If I have just a second, another one. So let me ask you. So people who, within that period of time, may have been denied benefits by the insurance company, by Provident, but did not file a lawsuit. Are in better shape. They get reassessment. That's right. They're in better shape than Ms. Farabi. She pursued her rights. She filed a lawsuit. She found a lawyer. She's trying to get her rights enforced. And she's in worse shape than someone actually back to 1997 who never filed a lawsuit. They can now have their claims reopened and assessed under a de novo or standard of review. And while we're on the request for judicial notice, if I could just have a second, if you look at page 72 under the terms of the agreement, paragraph A specifically says that they're going to discontinue use of abusive discretion unless the reviewing court determines otherwise. So in other words, the option of arguing de novo is still open to us in this case and in other cases that we have where we have a judgment and we're either pending for this court or any other situation where we may not fall under the CSA reassessment. So I'll take that. All right. Thank you, counsel. I think we should hear from Provident. Good morning. My name is Melissa Cowan. I represent Appellees Provident Life and also the Pacific Care Health Systems, Inc. Employee Benefit Plan. I also have here with me Rick Ramsey in the front row, who represents Rick Ramsey from the American Health Insurance Plans. He filed an amicus on behalf of Provident. Let's take a step back. No one disputes in this case that there is a discretionary clause in the Provident policy which under Firestone allows there to be an abusive discretion standard review. So we have to take a look at its three issues. Number one, the DOI's recent disapproval of the discretionary clause cannot be retroactively applied to a case in which the claim was evaluated and the judgment was entered well before this challenge, so to speak, was published to everyone. Number two, Ms. Faraghi has not presented any evidence of a material probative conflict of interest to warrant a shift from the abusive discretion standard to De Novo. Under the ninth circuit case law. Correct. And lastly, based upon Provident's multiple medical reviews and IME, and two discussions with the employer confirming that Ms. Faraghi can, in fact, perform her occupation within very mild restrictions, there was no abusive discretion, or in fact, under De Novo standard review, there is a, Provident made a proper decision. I think the focus today has been on the DOI's actions. What we're not talking about is the Court doesn't have to decide whether or not the DOI has authority to regulate insurance contracts issued in California. We don't have to talk about the effect in the future that this order that came down, I believe it was in May, has on future contracts or into the future. Appellant has also conceded that the DOI's actions are not binding on this Court, nor can they act retroactively. They are prospective only. So what we're really dealing with is, in principle, can the DOI's actions apply retroactively? I submit that they cannot. ERISA was created for several purposes. Number one, to give cost-effective and affordable employee benefit plans to the masses. Two, to avoid a multiplicity of regulation, allowing the Federal courts to govern rather than the State courts. And lastly, to have a national uniform administration of these plans so the plans are treated equally across the board. The Supreme Court stated, as Judge Singleton mentioned in Forreston, that there is this abuse of discretion standard based upon trust law. And now the DOI's actions and appellant's views in this case are direct challenge to the Supreme Court and all Ninth Circuit law that has interpreted the abuse of discretion standard since that time. Now, as Judge Pius has pointed out, we believe that there has been a waiver. If this is something that appellant's counsels believed has been a problem all along, they could have raised it. They simply didn't. We are prejudiced in the fact that all of this information has been presented by the DOI, numerous requests for judicial notice, all of these arguments are made. They're outside the administrative record. In an ERISA case, under Tuft, you're limited to what's in the administrative record, so you can't analyze it. And that's a legal argument. Well, legal arguments cannot be assessed if there's prejudice given to the other side. Well, what's the factual, what factual record do you need here? This discretionary clause in this policy conflicts with State insurance law. It does or it doesn't. What they're doing in this instance. Several district courts have said it doesn't. Several have said it does. What are the, what factual record would you want to build? Well, in this instance, this case, this language here has not been disapproved and was never disapproved by the Department of Insurance until starting last February. It was always approved. So this issue of how we can apply this retroactively wasn't something that was before the Court. And I believe that Judge Patel in both the Horn v. Providence and in the Firestone v. Atkinson case honed in on those points. That this is not something that we can give credence to or persuasive value to at all because this isn't something we should be considering at all. Now, with regard to the validity or the persuasive value of the Department of Insurance actions, as was pointed out here, the only published cases actually point to the fact that these cannot, this DOI action cannot be retroactively applied. It's only prospective. And, in fact, applying it in this case, even in principle, would basically turn the Supreme Court's Firestone case on its head, turn all of Ninth Circuit law on its head, and taken to its logical end, it would imply that the Department of Insurance has been acting illegally by even allowing these policies to be out there. We submit that the DOI is not going to concede that point. Counsel, the closest analogy that I can understand to the utilization of the insurance commissioner's conclusions as a means of invalidating a provision in the contract is the Doctrine of Unconscionability that came initially through the UCC and then has been adopted more generally and has been given expression by a number of Ninth Circuit and California cases in other contexts. I think the question Judge Paez raised with you, and I'm not sure you answered it, is where there is a claim on appeal that was not raised in the trial court that a given provision of a contract upon which the trial court relied is unconscionable. May the appellate court address that issue in the first instance on the theory that unconscionability is a pure question of law not requiring any factual development to evaluate? Yes, it may. However, in this instance, there was factual development submitted on appeal by simply the arguments made by the DOI and the appellants here. But what facts? What facts? The actual order that has come out. You're saying this, the order that's in the third request, is that a fact or is that? Well, the fact that they have done this and that they have felt that the DOI has felt back since the 1990s that this policy should not have been approved. That's the key fact, that they're saying that all along this has been illusory, and now we're just coming out and saying something about it. Now we're going to fix it. The point is, though, taking your analogy one step further, there are brilliant minds in the Supreme Court and in the Ninth Circuit. This issue of the validity of the discretionary clause has never before been challenged simply because it's not an illegal or an illusory clause. It's taken straight from trust law. Trust law allows it. If it's illusory here, it's going to be illusory in a trust context. Well, you have to agree that California law sometimes differs from the law of the rest of the country. I'm not even talking about the Ninth Circuit. It's California state law. The agencies take different positions than maybe common law, trust law would require. And the question would be, I would think, whether the law of ERISA controls this policy, or does the California Department of Insurance have the power and authority to regulate this policy? In a retroactive manner, it cannot. As the district courts have found, they've agreed there has to be a bright line test somewhere. We either do it prospectively or retroactively. Because otherwise, the Department of Insurance bases its analysis, I believe it's 10295. I'm sorry. I'm going to screw that California Insurance Transportation Act. Kagan. It's 10291.5. 10291.5. Thank you. Based on that, and that statute does not give the DOI authority or power to retroactively apply this. They have to go through various processes, as Mr. Hiller announced, various processes to give due process, to give notice. This is what we're going to do. In this instance, applying this clause retroactively would effectively be unilaterally reforming the contract from which the claimants are not relied, the employer relied, and the court relied. So really what you're saying isn't that a factual record needs to be made, but that you, that Providence should have the opportunity to raise all these arguments as to why this decree should not apply retroactively, and that you have not had the opportunity to make all these arguments in this case, either at the district court level or in front of us, really, until now. Until now. I guess that is one way I could say it, but I still believe that the factual presentation made here today, that this is something that we've always believed is illusory and wrong, but we let it go anyways, is a key factual element that prejudices us, if the court considers it today. Let me just ask you a question, though. I realize that the settlement agreement comes in a different context. Yes. But nonetheless, the settlement agreement agrees to go back and retroactively essentially apply the commissioner's view to hundreds of claims that were denied years ago. That's why it's called a settlement agreement, because it's a compromise in which the company engaged in, it's been under attack by the Department of Insurance amongst many companies, but it's targeted. Right. There's a number of insurance companies that are part of it. But in this instance, the Department of Insurance and the Providence entities came to the conclusion that we're going to parse out those claims that aren't supposed to be part of this California settlement agreement. And amongst those, as you pointed out, were those that have gone to judgment and those in which there's, I forget what the second item was, but we fall under both of those categories. The CSA or the California settlement agreement does not pertain. There has to be a judgment. Correct, and there was a judgment in this case. And I think that's only the, it's against public policy to try and retroactively apply any statute or decision that might have come into play. For example, on the way here, I had to buy gas. Let's assume that the legislature created a gas tax today to somehow help out, you know, against smokers or against children or something like that. Well, I got charged that one-cent gas tax today as I came along here for every gallon I bought. But you know what? That gas station owner decided, heck, this is a really good idea. I'm going to charge everybody else who's purchased gas for this past five years the same amount. So he goes out and charges all their credit cards an additional one-cent of gas every single time. Now, what is he doing? He's unilaterally reforming that contract. Public, including Californians, would be up in arms if something like that happened. Essentially, what's happened here is the Department of Insurance is attempting to pull the rug out from Providence and the courts as to something that was valid and legal at the time by the California, excuse me, by the Ninth Circuit and by the Supreme Court. You never addressed it square on. But this court validates it. I looked at all the cases you cited, and one of those cases that you cited was this issue of the California, what is it, 10- 10291.5. 10291.5b is ever discussed, not even mentioned. Correct. So the Ninth Circuit has never addressed this issue. Only the district courts in the last couple of years have began to look at this issue. And there is a split. The Supreme Court has validated the discretionary clause by simply allowing it to be applied. But nobody has looked at whether how California law applies in this particular situation. I agree. If at all. I agree. It would also undermine the very purpose of ERISA if this were permitted. Because what it would allow is California claimants would essentially be treated differently under a national plan than any other individual. Well, if I understand not only the California settlement agreement, but the settlement agreement at the national level, this is, we're going to see the demise of discretionary clauses in these insurance contracts. They're gone. No, actually, the discretionary authority issue is not addressed in the regulatory settlement agreement. It's only within the California. So only in California are we going to see the end of these discretionary clauses and disability group insurance. That's right. And what it's doing is it's actually returning us to how we were before ERISA became into play. As Firestone notes, before ERISA, we had a situation in which there were contracts evaluated under de novo standard of review. ERISA is now in play and we're allowed to rely upon trust law. It's not allowing us to do that. So do you understand the California State position to be that the entire contract would be void or we would just send it back for de novo review? It shifts back and forth. Basically, I have read so much on this by the Department of Insurance. They first claim it voids the entire contract because it makes it illusory and unconscionable, and so today it was stated that it's excised out. I'm unclear as to their position. No, they said it made the whole contract void, and I was the one who suggested that perhaps all you do is excise out that discretionary thing and return to the day of de novo review. Well, I believe analogous to that, the Horn case somewhat dealt with that. What do you do in a case where someone – it's a voidable policy. The argument was what do you do if this is not permitted. The Horn case said, well, then you have to look as to whether or not there's a sound basis for the DOI's position, and as we noted in our papers, there is not a sound basis for the DOI's analysis. There's not a federal discretion here given to the claims fiduciary, nor does it nullify the policy in any way. Simply put, what happens is you have the claim under arrest regulations. You have a full and fair analysis. The claimant's allowed to appeal. You have a full and fair analysis there without deference to the initial review. The claimant is allowed to submit it to the court if they want to. The court does not have automatic abuse of discretion. They have to determine whether or not there's a conflict of interest. And under those circumstances, what's being attacked here is not the claim and the claims handled by the fiduciary, who automatically has discretion anyways under 29 U.S.C. 1002, 21A3. What you're attacking is the judicial analysis of it and the judicial review. And that's really what we're talking about here today. And we're not talking about claims. We're talking about the courts. Well, we're talking about standard of review. And that's it. That's what this whole case is about. All right. So it's your position that under either standard of review, de novo or abuse of discretion, that this claim should be denied. Thank you for that transition. The claim should have been denied, yes. Then why under de novo? Explain to me that. Well, in this instance, we got all of her medical records. And her doctor said from the very beginning she had only slight to moderate pain. This woman worked for 16 months after her accident, was laid off, came back, and she suddenly says, I can't work anymore. We got the medical records. We had our medical reviewers look at it, and they felt, yes, she has some objective statements of problems, but pain and a torn knee ligament, they don't equate with disability because what you have to look at is those person's job duties and see if they comport. The part that bothered me is that her treating physician said she had extrusions in her discs at L4 and L5 and created lower back pain. And none of the insurance company's doctors even talked about it, and their recommendation was that she could sit for, I think, six or eight hours a day. And they seemed to just ignore the whole back issue and just talk about the knee issue. Actually, that's not my understanding of the administrative record. If you look at every single they're actually the accusation during the claim was that we looked at everything but her shoulder. If you look at every single medical review, every medical review analyzes these issues, and specifically Dr. Matheny in his initial evaluation said, here are her problems. She can't bend, twist, et cetera, because of her back, because of her knee, she shouldn't be doing these things. And I basically believe that Dr. Matheny said she simply shouldn't be sitting for long periods. True, and that's well known, that if you have something at L4 and L5, you can't sit for long periods. Yes, and actually it went to an IME, and the IME said the same thing. And it's not much different than what her doctor said with regard to her complaints. But what her doctor relied upon is, yes, you have these problems. It's a two-millimeter disc bulge, I believe, which is fairly nominal in someone who has degenerative problems at that age. Almost everybody, at least doctors that I've been told, you got one of these and you're going to sit, you're going to have pain, you live with it. But the fact is here what we did is we had the IME. He said she can have some restrictions, but she can perform a sedentary occupation under these circumstances. We called the employer. The employer said, yes, she can do this. We've accommodated people in this fashion a long time before. But you know what? This froggy doesn't want to come back to work. This policy doesn't pay for people who don't want to work. This policy pays for someone who actually has a disability that precludes them from performing their occupational duties. So what do we have here? We have Ms. Faraghi who then submits additional information on appeal. This information is nothing new. And, in fact, it is. Well, she does submit, I think, isn't this where Dr. Malik finally responds? Yes. And he says in his letter to the insurance company towards the end, he says, I further disagree with Dr. Sampson's, the IME, opinion returning the patient to sedentary work. A sedentary work limitation contemplates the individual can do work in a sitting position at a bench, desk, or table with minimal physical demands with some degree of walking and standing being permitted. Any significant sitting or weight bearing aggravates the plaintiff's complaint of knee pain as well as lower back pain. That's the key word, significant. Therefore, in my opinion, the patient remains temporarily, totally disabled, unable to return to that work activity. The response to that is, number one, under NORD, the insurance company does not have to give deference to the insurance treating physician. That's not really the question. The question really has to do with whether the accommodation offered makes her able to perform her usual work. Well, under number two, my second point is that the fact is this treating physician has, the chiropractor, stated significant sitting. Everything before said prolonged sitting. Prolonged sitting, as defined by the IME, is anything in excess of an hour. You can get up, you can walk around five or ten minutes, which normal people do in the public. I go get a cup of coffee, go drop off some forms at somebody else's desk. You can do that, come back to work. This individual also gets customary breaks and a lunch. She's not sitting for six to eight hours. Her employer actually said she doesn't have to stand to do her job. I mean, excuse me, she doesn't have to sit all the time. She can stand, she can do whatever to do her job. And these accommodations had been made. Under these circumstances, with the medical reviews by two orthopedic surgeons, the IME by a board-certified orthopedic surgeon, two contacts with the employer, both of which said, yes, she can work under these circumstances. We satisfy the full and fair review requirements under the rarest of regulations. Under a Danoba standard review, the district court is just not limited to what's in the administrative record. Typically, the courts are focused solely on the administrative record and discretionary. The court can find a fact in dispute about this, whether it's significant, prolonged, or whatnot, and could consider additional evidence to make that determination. I believe that is the accurate statement of the law. What is the difference between significant and prolonged? Prolonged, at least under, I don't think there's any significant, as I use that word, evaluation. Significant, what this doctor shows us, this doctor did not have any information about her job duties, nor did he ever speak with her employer. So significant, in my view, as to what he said and what Judge Paez read, is something where this woman is sitting all day long at a computer and doesn't get up, doesn't walk around. That's significant sitting. He mentioned in his prior reports, in fact, in the same report, he says prolonged sitting. She, with prolonged sitting, she has these problems. Prolonged, in the view of Dr. Sampson and the other doctors at Provident, would be what is beyond six to eight hours, as you have pointed out. It's not something that would be one hour you can get up, stretch around, and come sit back down. All right. If no one has any further questions, thank you very much, counsel, for the argument on both sides. Bragy v. Provident is submitted.
judges: Wardlaw, Paez, Singleton